**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICKEY BOONE. | Criminal Action No. 22-233 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Rickey Boone's ("Defendant") Motion to Dismiss his one count indictment (the "Indictment") charging him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("Section 922(g)(1)"). (ECF No. 30.) Following the Supreme Court's decision in *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) and the Third Circuit's en banc decision in *Range v. Attorney General United States*, 69 F.4th 96 (3d Cir. 2023) (en banc), Defendant argues that the Indictment must be dismissed as unconstitutional on its face and as applied to him. The Government filed a brief in opposition to Defendant's Motion to Dismiss. (ECF No. 34.) Defendant did not submit a reply. For the reasons set forth herein, the Court denies Defendant's Motion to Dismiss.

**I.   BACKGROUND**

As alleged by the Government,[1] shortly after midnight on January 7, 2022, a woman ("Victim 1") arrived at the Trenton Police Department and requested that the Trenton police escort

---

[1] Given that the Defendant's moving brief contains no factual background (*See* Def.'s Moving Br. 1, ECF No. 30), the Court derives the following factual recitation from the Government's opposition brief (*See* Gov't's Opp'n Br. 1-3, ECF No. 34). The Court does not accept or reject the Government's allegations in its brief as true. Such facts are presented here for context of the underlying Indictment.

her to her apartment in Trenton, New Jersey. (Gov't's Opp'n Br. 1.) The officers agreed to escort Victim 1 to her apartment, and upon entering, Defendant was found sitting on a couch near the front door, "next to a handgun within arms' reach." (*Id.* at 3.) Defendant was separated from the handgun and arrested. (*Id.*) He later admitted that the handgun was, indeed, his. (*Id.*) A search of Defendant's person also revealed ten ammunition rounds in his front pocket that were compatible with the handgun. (*Id.*)

This was not Defendant's first run-in with the law. Before the instant offense, the Government notes that Defendant sustained four prior felony convictions for third-degree crimes under New Jersey law—crimes punishable by three to five years' imprisonment. (*Id.*) This included convictions for: (1) possession of a controlled dangerous substance (heroin); (2) possession with intent to distribute a controlled dangerous substance (heroin) in a school zone; (3) possession with intent to distribute a controlled dangerous substance (crack cocaine) in a school zone; and (4) possessing a weapon for an unlawful purpose.[2] (*Id.* at 3-4.)

On March 31, 2022, a grand jury charged Defendant in this case with a one count Indictment for possession of a firearm in violation of Section 922(g)(1)—stemming from the aforesaid events and arrest in January 2022. (*See* Indictment.) The Indictment states that Defendant

---

[2] Defendant notes that the "prior conviction(s) [are] not specified in the [I]ndictment." (Def.'s Moving Br. 1, 7.) He does not, however, otherwise challenge the Government's recitation as to the nature of his past crimes. (*Id.*) Nor does he proffer any legal argument to support that each of Defendant's prior convictions must be detailed within the Indictment. (*See id.*) An indictment must contain only "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Here, the Court finds that the Indictment is adequate because it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citation omitted), *cert. denied*, 568 U.S. 941 (2012). (*See also* Indictment, ECF No. 1.)

"knowingly possess[ed] a firearm" while "knowing that he had previously been convicted in a court of at least one crime punishable by a term of imprisonment exceeding one year[.]" (*Id.* at 1.)

Now before the Court is Defendant's Motion to Dismiss the Indictment on the basis that the Section 922(g)(1) charge is unconstitutional both on its face and as applied to him in light of the recent rulings by the Supreme Court in *Bruen* and the Third Circuit in *Range*. (*See generally* Def.'s Moving Br.) For the reasons below, Defendant's Motion is denied.

## II. <u>LEGAL STANDARD</u>

A defendant may bring a motion to dismiss a criminal pleading under Federal Rule of Criminal Procedure 12. "In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

Under Federal Rule of Criminal Procedure 12(b)(1), "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R Crim. P. 12(b)(1). Where, as here, a defendant raises an as-applied challenge to an indictment, the Court must determine whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's specific conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974). By contrast, facial challenges require the Court to ask whether a law "could never be applied in a valid manner[,]" and as such, must be struck down in its entirety. *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984). To succeed on a facial challenge, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The distinction between facial and as-applied challenges pertains to the "breadth of the remedy employed by the Court[.]" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). In other words, the

difference here is whether Section 922(g)(1) as applied to Defendant alone or as applied to all defendants is constitutional.

## III. DISCUSSION

Defendant challenges to Section 922(g)(1) are two-fold. First, Defendant argues that the Indictment must be dismissed because Section 922(g)(1), as a whole and on its face, violates the Second Amendment. (Def.'s Moving Br.) Second, Defendant argues that Section 922(g)(1) is unconstitutional as applied to him specifically. (*Id.* at 1-3, 8-9.) The Court first briefly discusses the current state of Second Amendment jurisprudence before addressing both of Defendant's arguments in turn.

### A. Current Second Amendment Law

The Second Amendment of the U.S. Constitution provides that: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court—in interpreting the Second Amendment—has reinforced the principle that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense[.]" *Bruen*, 597 U.S. at 10 (first citing *District of Columbia v. Heller*, 554 U.S. 570 (2008); and then citing *McDonald v. Chicago*, 561 U.S. 742 (2010)).

Although the Second Amendment confers a right to bear arms, it is well settled that this right is not "unlimited." *Heller*, 554 U.S. at 595, 626. Indeed, the Supreme Court in *Heller* explained:

> [a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

4

*Id.* at 626-27 (footnote omitted); *see also McDonald*, 561 U.S. at 786 (reaffirming and repeating *Heller*'s assurances that regulatory measures that prohibit "the possession of firearms by felons and the mentally ill" are consistent with the Second Amendment).

The Supreme Court in *Bruen* set forth the applicable test for a court to apply when assessing the limitations of Second Amendment rights:

> In keeping with *Heller,* we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 597 U.S. at 17 (citations and internal quotation marks omitted). *See id.* at 19 ("the [G]overnment must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). Accordingly, under *Bruen*, this Court must first assess whether the Second Amendment's plain text covers the individual's conduct at issue. *Id.* at 17. If so, the Court must then assess whether the Government has sufficiently demonstrated that the regulation in question is consistent with the nation's historical tradition of firearm regulation. *Id.*

The Third Circuit recently weighed in on prevalent Second Amendment issues in *Range*, 69 F.4th at 98. In *Range*, in what was described as a "narrow" decision, the Third Circuit addressed whether Section 922(g)(1) was unconstitutional as to Bryan Range ("Range"), a defendant who had previously pleaded guilty in 1995 to "making a false statement to obtain food stamps in violation of Pennsylvania law." *Id.* at 98, 106. Range's conviction precluded him from possessing

a firearm under Section 922(g)(1). *Id.* at 98-99. Range, however, sought to possess a hunting rifle and a shotgun for home defense, so he argued that applying Section 922(g)(1) against him violated the Second Amendment. *Id.* at 99.

In assessing the constitutionality of Section 922(g)(1), the Third Circuit employed the analytical structure put forth by the Supreme Court in *Bruen* and found that Section 922(g)(1) was unconstitutional as applied to Range. *Id.* at 99, 106. First, the "threshold question" was whether Range was one of "the people" who have rights under the Second Amendment. *Id.* at 101. The Third Circuit answered that question affirmatively, finding that Range was among "the people," and rejected the notion that this term referred only to law-abiding, responsible individuals, because "'the people' as used throughout the Constitution 'unambiguously refers to all members of the political community, not an unspecified subset.'" *Id.* at 101, 103 (quoting *Heller*, 554 U.S. at 580). Having found that Range is one of "the people," the court turned to what it coined as the "easy question" of whether § 922(g)(1) regulates Second Amendment conduct. *Id.* at 103. The Third Circuit found that it did as "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined by *Heller*." *Id.* (citing *Heller*, 554 U.S. at 582).

Finding that Section 922(g)(1) regulates "conduct" protected by the Second Amendment, the Third Circuit turned to the more complicated question to be considered: whether the Government had met its burden in showing that prohibiting someone who had been convicted of Range's prior felony offense was consistent with the nation's historical tradition of firearm regulation. *Id.* (citing *Bruen*, 597 U.S. at 20). The Third Circuit held that the Government had not met its burden because, in part, the historical law that prohibited convicted felons from possessing

6

firearms applied only to violent criminals, and Range had not been convicted of a violent crime. *Id.* at 103-04.

Again, the Third Circuit emphasized that its ruling in *Range* "is a narrow one" tailored to Range himself. *Id.* at 106. Judge Ambro's concurrence, for example, cautioned that "the Government's failure to carry its burden in this case *does not spell doom for § 922(g)(1)*." *Id.* at 109 (emphasis added). To the contrary, Judge Ambro explained that Section 922(g)(1) remains:

> *presumptively lawful* . . . because [Section 922(g)(1)] fits within our Nation's history and tradition of *disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society*. And I join the majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.

*Id.* at 109-10 (emphasis added) (citations omitted).

**B.     Whether Section 922(g)(1) is Facially Unconstitutional**

Moving forward with this framework in mind, the Court begins by assessing Defendant's contention that Section 922(g)(1) is facially unconstitutional. (*See* Def.'s Moving Br.) A facial constitutional challenge to a statute requires a strong showing that Section 922(g)(1) "is unconstitutional in all of its applications." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). That is, Defendant "must establish that no set of circumstances exists under which [Section 922(g)(1)] would be valid." *Id.* (quoting *Salerno*, 481 U.S. at 745).

Defendant has not met his burden in showing that Section 922(g)(1) violates the Second Amendment in all its applications. First, as described, *supra*, the Supreme Court's decisions in *Bruen*, *Heller*, and *McDonald* all squarely reject Defendant's argument that Section 922(g)(1) is facially unconstitutional because it "prohibits anyone with a felony from possessing a weapon regardless of the prior conviction." (Def.'s Moving Br. 7.) The Supreme Court confirmed that

longstanding prohibitions on felons possessing firearms, such as Section 922(g)(1), are "presumptively lawful regulatory measures." *See Bruen*, 597 U.S. at 81 (citing favorably the analysis of Justice Scalia's opinion in *Heller* and Justice Alito's opinion in *McDonald* that nothing should "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" and that such regulatory measures are "presumptively lawful."). In other words, the Supreme Court's statements in *Heller* and *McDonald* that Section 922(g)(1) is presumptively lawful are not dicta and remain binding on this Court. *See also Porter v. United States*, No. 22-6199, 2023 WL 6366273, at *4 (D.N.J. Sept. 28, 2023) (accepting the same principle that "[w]ithout explicit language in *Bruen*, this [c]ourt does not find that the *Bruen* Court intended to abrogate or overturn *Heller* and *McDonald*").

Nor is the Court persuaded that *Range* constituted an intervening change to the controlling law that would mandate a different result. (*See* Def.'s Moving Br. 7-8.) The majority, concurring, and dissenting opinions in *Range* each took measures to clarify that the decision was narrowly tailored to Range's as-applied challenge to Section 922(g)(1). *See* 69 F.4th at 106. The Third Circuit in *Range* refrained from declaring that Section 922(g)(1) was unconstitutional on its face and carefully instructed that the statute remained facially constitutional. *See id.* ("Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) *only as applied to him* given his violation of 62 Pa. Stat. Ann. § 481(a)." (emphasis added)); *id.* at 109 (Ambro, J., concurring) (finding the Government's failure to carry its burden in this case "does not spell doom for [Section] 922(g)(1)" and that the statute "remains 'presumptively lawful.'" (quoting *Heller*, 554 U.S. 626-27); *id.* at 114 (Shwartz, J., dissenting) ("a majority of the *Bruen* Court reiterated that felon bans are presumptively lawful, and notably did so in the very case that explicitly requires courts to find historical support for every firearm regulation.").

8

Finally, although not binding on this Court, this Court would be remiss not to mention that other federal courts, including a number of courts within this circuit, have consistently rejected facial challenges to Section 922(g)(1) based upon the Supreme Court's decision in *Bruen*. *See Porter*, 2023 WL 6366273, at *5 (finding that Section 922(g)(1) "is facially constitutional" and "[p]etitioner's claim that [Section] 922(g)(1) in its entirety is unconstitutional is denied."); *United States v. Minter*, 635 F. Supp. 3d 352, 363 (M.D. Pa. 2022) (denying facial challenge to Section 922(g)(1) and collecting various cases from other jurisdictions); *United States v. Collier*, No. 21-375, 2023 WL 7386568, at *1 (W.D. Pa. Nov. 8, 2023) ("[T]his court finds persuasive the growing consensus of courts rejecting constitutional challenges to Section 922(g)(1)"); *United States v. Reichenbach*, No. 22-57, 2023 WL 5916467, at *5 (M.D. Pa. Sept. 11, 2023) ("[T]his [c]ourt first turns to the question of whether 18 U.S.C. § 922(g)(1) is facially unconstitutional. The [c]ourt concludes that it is not."); *United States v. Pearson*, No. 22-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) ("[W]e cannot reach so far as to find [S]ection 922(g)(1) is facially unconstitutional on any ground or as applied to [the defendant]."). This Court therefore aligns with the other federal courts in this circuit and finds that Section 922(g)(1) is not unconstitutional on its face and there is no reason to dismiss the Indictment against Defendant on this basis.

C.   **Whether Section 922(g)(1) is Unconstitutional As Applied to Defendant**

Having determined Section 922(g)(1) is facially constitutional, the Court considers Defendant's remaining argument as to whether the statute can withstand an as-applied challenge by a defendant who has been convicted of multiple felony drug distribution offenses. (*See* Def.'s Moving Br. 1-3, 8-9.) This Court finds that it does.

Even prior to *Bruen* and *Range's* progeny, the Third Circuit "permit[ted] Second Amendment challenges to [Section] 922(g)(1) as applied to individuals[.]" *Folajtar v. Att'y Gen.*

9

*of the U.S.*, 980 F.3d 897, 901 (3d Cir. 2020), *abrogated by Range*, 69 F.4th at 96. The Third Circuit in *Range* specifically endorsed a case-by-case approach when considering an as-applied challenge to Section 922(g)(1). *See* 69 F.4th at 101, 106.

First, in considering an as-applied challenge, the court must ask whether the "Second Amendment applies to a person and his proposed conduct." *Id.* at 101 (citing *Bruen*, 597 U.S. at 32-33). For this part of the *Range* test, the Government accepts for purposes of the motion that Defendant is one of "the people" protected by the Second Amendment. (*See* Gov't's Opp'n Br. 7 (noting that "[u]nder *Range*, the government presumes that [Defendant] is one of 'the people' protected by the Second Amendment.").)[3]

Next, the Government argues that the Second Amendment plain text does not apply to Defendant's conduct because Defendant has not shown "any evidence that he sought to carry a gun for a Second Amendment purpose." (Gov't's Opp'n Br. 9 (citation omitted).) The Court, however, "need not resolve this question," because even assuming that Defendant's conduct is covered by the plain text of the Second Amendment, the Court finds that the Government met its burden in showing that Section 922(g)(1), as applied to Defendant, was "consistent with the Nation's historical tradition of firearm regulation." *See Porter*, 2023 WL 6366273, at *4-5.

Applying the framework prescribed by *Bruen*, the Third Circuit in *Range* explained that the Government may justify a restriction on firearm possession "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Range*, 69 F.4th at 103 (quoting *Bruen*, 597 U.S. at 24). *Bruen* "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's . . . historical understanding." 597 U.S.

---

[3] The Government appears to contest *Range's* broader sweeping proposition that "this language covers all Americans and not only law-abiding persons" and "preserves this argument for appeal." (Gov't's Opp'n Br. 7 n.3.)

at 26. This test is "straightforward" "when a challenged regulation addresses a general societal problem that has persisted since the 18th century." *Id.* But the Second Amendment is also flexible enough to "apply to circumstances beyond those the Founders specifically anticipated." *Id.* at 28. In such cases, the government must "identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* Historical sources from the 18th and 19th centuries when the Second and Fourteenth Amendments were adopted are certainly persuasive. *Id.* at 26-30. In laymen's terms, this Court must consider whether the historical analogues identified by the Government establish that founding-era governments disarmed people like Defendant; namely, those who were convicted of prior drug trafficking felonies. *See Range*, 69 F.4th at 103, 106, 104 n.9.

"While there is no history of legislatures specifically prohibiting firearm-possession by felons prior to 1938, the *Bruen* Court explained that the Government must identify a 'historical analogue, not a historical twin.'" *Porter*, 2023 WL 6366273, at *7 (quoting *Bruen*, 597 U.S. at 30). Here, the Government identifies historical support for restricting possession of firearms by individuals like Defendant who repeatedly committed felony crimes. (Gov't's Opp'n Br. 14-16.) The Government notes that the Second Amendment "codified a right 'inherited from our English ancestors.'" (*Id.* at 14 (quoting *Heller*, 554 U.S. at 599)). In England, for example, "a 17th century statute empowered the government to 'seize all arms in the custody or possession of any person' who was 'judge[d] dangerous to the Peace of the Kingdom.'" (*Id.* (quoting Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13).) This statute "continued unabated" after the 1689 English Bill of Rights, which expressly guaranteed the right to keep and bear arms. (*Id.* (citing Diarmuid F. O'Scannlain,

11

"Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms," 95 Notre Dame L. Rev. 397, 405 (2019)).)

Precursors to the Second Amendment "proposed in the state ratifying conventions likewise suggest that legislatures may pass legislation disarming certain categories of individuals, including those who are dangerous." (*Id.* at 15.) "A proposal presented at the Pennsylvania ratifying convention, for instance, stated that 'no law shall be passed for disarming the people or any of them *unless for crimes committed, or real danger of public injury from individuals*.'" (*Id.* at 15-16 (emphasis added) (quoting 2 Bernard Schwartz, The Bill of Rights: A Documentary History 665 (1971)).) *See also Porter*, 2023 WL 6366273, at *7 ("A proposal . . . at the Massachusetts ratifying convention likewise provided that Congress may not 'prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms.'").

Post-ratification efforts point in the same direction. In the mid-19th century, many states enacted laws requiring "those threatening to do harm" to "post bond before carrying weapons in public." (*Id.* (first citing *Bruen*, 597 U.S. at 55; then citing Mass. Rev. Stat. ch. 134, § 16, 750 (1836); Me. Rev. Stat. ch. 169, § 16, 709 (1840); and Mich. Rev. Stat. ch. 162, § 16, 162 (1846)).) These statutes exemplify that individuals who were "reasonably accused of intending to injure another or breach the peace" could properly be subject to firearm restrictions that did not apply to others. (*Id.* (quoting *Bruen*, 597 U.S. at 57).) As one early scholar wrote, the government can restrict someone's right to bear arms when there was "just reason to fear that he purposes to make an unlawful use of them." (*Id.* (quoting William Rawle, *A View of the Constitution of the United States of America* 126 (2d ed. 1829).)

Those convicted of a felony were first prohibited under federal law from "receiving" firearms in 1938. Federal Firearms Act of 1938, Pub. L. No. 75-850 § 8(f), 52 Stat. 1250, 1251

12

(1938). This law applied to persons "convicted of a crime of violence," which included "murder, manslaughter, rape, mayhem, kidnaping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year." *Id.* §§ 6, 8(f). The crime of violence limitation, however, was eliminated by Congress through the Federal Firearms Act, Pub. L. 87-342, 75 Stat. 757 (1961). "In 1968, Congress changed the prohibited act to 'possession,' creating the law in its current form." *Porter*, 2023 WL 6366273, at *6 (first citing Pub. L. No. 90-618 § 922(g)(1); and then citing 82 Stat. 1213, 1220 (1968)).

Section 922(g)(1) was enacted by Congress "to address modern conditions." *Id.* (quoting *United States v. Jackson*, 69 F.4th 495, 504-06 (8th Cir. 2023)). As described by the Eighth Circuit in *Jackson*, Congress enacted the Omnibus Crime Control and Safe Streets Act of 1968 ("Safe Streets Act"), an analogous prohibition to Section 922(g)(1), to address:

> widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce, and that the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals . . . , narcotics addicts, mental defectives, . . . and others whose possession of such weapons is similarly contrary to the public interest) [which Congress found to be] a significant factor in the prevalence of lawlessness and violent crime in the United States.

*Jackson*, 69 F.4th at 504 (citations and internal quotations omitted).

The Supreme Court has thus recognized that the purpose of the Safe Streets Act was to curb "lawlessness and violent crime." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). The Supreme Court later described in *Barrett v. United States* that the "very structure of the Gun Control Act demonstrates that Congress . . . sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." 423 U.S. 212, 218 (1976). To be sure, Congress prohibited "categories of presumptively dangerous persons from transporting or

receiving firearms[,]" *Lewis v. United States*, 445 U.S. 55, 64 (1980), because they "pose[d] an unacceptable risk of dangerousness." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 120 (1983).

Considering the same historical analogues, courts in this circuit roundly agree that Section 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation as applied to individuals, like Defendant, who have sustained prior felony convictions for drug trafficking. *See Porter*, 2023 WL 6366273, at *7 ("Petitioner's prior convictions for drug possession and distribution, including a felony drug conviction in which he was sentenced to three years imprisonment and had been release[d] from custody shortly before his arrest for the instant conviction, show[s] that he poses a danger to society."); *United States v. Blackshear*, No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (denying an as-applied challenge to § 922(g)(1) based on *Heller* and the history of disarming dangerous individuals where a defendant had multiple felony drug and firearm convictions); *United States v. Minter*, No. 22-155, 2023 WL 6051265, at *6, *9 (M.D. Pa. Sept. 15, 2023) (denying motion for reconsideration on as-applied challenge to Section 922(g)(1) by defendant with felony drug convictions based on *Heller* and historical statutes disarming individuals "deemed dangerous, untrustworthy, or unlikely to abide by the law" as proper historical analogues to Section 922(g)(1)); *Reichenbach*, 2023 WL 5916467, at *6-10 (denying a defendant with felony drug convictions as-applied and facial challenge to Section 922(g)(1) based on 18th and 19th century laws prohibiting the possession of firearms which were sufficiently analogous to Section 922(g)(1) prohibiting drug traffickers from possessing firearms).

Based on the Supreme Court's guidance and the historical analogues presented by the Government in opposing Defendant's motion, the Court finds the Section 922(g)(1) is constitutional as applied to Defendant. While Defendant heavily relies on the Third Circuit's

14

decision in *Range* to support the dismissal of the Indictment, there is no question that *Range* was careful to detail that its decision "is a narrow one," finding that there was no history or tradition that supports "depriving people like Range of their firearms." *Range*, 69 F.4th at 106. More specifically, Range incurred a single misdemeanor conviction over 25 years earlier, when he was "earning between $9.00 and $9.50 an hour," and his wife "prepared an application for food stamps that understated Range's income, which she and Range signed," leading to a sentence of three years' probation. *Id.* at 98.

Defendant attempts to liken himself to the defendant in *Range*, stating that he "has no prior firearm history and no convictions of violence." (Def.'s Moving Br. 8.) But Defendant is clearly not like Range. Defendant sustained his first felony drug conviction when he was 23 years old. (Gov't's Opp'n 18.) He was convicted of "two more felony drug distribution [charges] over a three-year period while on probation for that first conviction, resulting in two four-year and one five-year sentences of imprisonment." (*Id.*) Then, in 2015, Boone was convicted of possessing a weapon for an unlawful purpose and sentenced to four years' probation. (*Id.*) This federal offense occurred less than three years after that four-year term of probation concluded. (*Id.*) Stated otherwise, the defendant in *Range* had one conviction for making a false statement on a food stamps application 25 years prior. *Range*, 69 F.4th at 98. Defendant is not in the same boat; he has multiple prior drug trafficking felonies, two of which occurred on or near school property. (Gov't's Opp'n 18.) These felonies, consistent with the above history and traditions of this nation, justify Defendant's disarmament. (*Id.*)

Finally, Defendant argues that there is no historical support for disarming someone like him because he does not have a prior firearm history or convictions of violence. (Def.'s Moving Br. 4, 6, 8.) Defendant lends support from a recent case: *United States v. Quailes*, a case decided

15

by the Middle District of Pennsylvania and which is currently pending on appeal before the Third Circuit. *See* No. 21-176, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023). *Quailes* involved an as-applied challenge to Section 922(g)(1) by a defendant with four prior state convictions for felony drug offenses. *Id.* at *1. On reconsideration, the district court in *Quailes* found that there was an intervening change in the controlling law, based on the decision in *Range*, and dismissed the defendant's indictment because the Government did not meet its burden to establish that 922(g)(1) is consistent with the Nation's "historical tradition of firearm regulation." *Id.* at *2, *9.

The Court stands by the holdings of other courts within this Circuit that have declined to follow the holding in *Quailes* because of its unique concern with the Government's inability to carry its burden in that case. In *United States v. Hedgepeth*, the District Court for the Eastern District of Pennsylvania clarified that the holding in *Quailes* was "based on the conclusion that the Government [in *Quailes*] had failed to meet its burden of demonstrating that prohibiting drug traffickers from possessing firearms is consistent with the Nation's historical tradition of firearm regulation." *See* No. 22-377, 2023 WL 7167138, at *8 n.6 (E.D. Pa. Oct. 31, 2023) (citation omitted). The district court in *Hedgepeth* declined to find the holding in *Quailes* persuasive because "the historical record presented by the Government [in *Hedgepeth*] demonstrate[d] that the Government . . . carried its burden." *Id.*

Unlike *Quailes*, the Court finds that the Government has carried its burden in this case of demonstrating that Section 922(g)(1) is constitutional as applied to Defendant. The Court echoes the sentiments of other courts in this District and Circuit and finds that there is clear historical support for the need for dispossession statutes affecting a repeat offender with felony possession with intent to deliver or distribute illegal drugs. Accordingly, Defendant's motion to dismiss the Indictment is denied.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court concludes that the Indictment, and Section 922(g)(1) upon which it rests, do not violate Defendant's Second Amendment rights. Accordingly, Defendant's Motion to Dismiss the Indictment is denied. An appropriate Order will follow.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE
